UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-10556-RGS

JEANNETTE BUNTIN

v.

CITY OF BOSTON, JAMES MCGONAGLE
AND SCOTT ALTHER

ORDER ON DEFENDANTS'
MOTION TO DISMISS

May 8, 2015

STEARNS, D.J.

Jeannette Buntin, the putative executrix of her father Oswald Hixon's estate, filed this action in Suffolk Superior Court alleging, among other claims, that during his employment as a heavy equipment repairman for the City of Boston's Department of Public Works (DPW), her father was subjected "to a continuing series of discriminatory, harassing and retaliatory acts sufficient to interfere with the terms and conditions of [his] contract of employment." Opp'n at 5. Defendants City of Boston, James McGonagle, and Scott Alther move to dismiss Buntin's Complaint arguing that Hixon's federal claims abated upon his death; that he did not file a state law discrimination claim with the Massachusetts Commission Against Discrimination (MCAD); that the federal and state law discrimination

1

claims brought by his daughter were not filed within the applicable statute of limitations; and that a presentment of the defamation claims was never made to the City of Boston. As the case was removed by defendants to this court on the basis of federal question jurisdiction, the court will limit its review to the federal claims.

BACKGROUND

For purposes of this motion, the following allegations of the Complaint are accepted as true. Hixon began working for the City of Boston in July of 2002. On October 25, 2007, he was ordered by his DPW manager to submit to a random drug and alcohol test. The City subsequently notified Hixon that had he failed the test and would be required to undergo counseling and a term of probation as a condition of continued employment. Hixon brought a grievance through his union (Hixon was a member of the American Federation of State, County and Municipal Employees (AFSCME)), but Buntin alleges that it was not taken seriously. Four years later, Hixon received a written warning for bringing a personal vehicle into his DPW work area. Buntin claims that the warning amounted to "racial harassment" because other employees, who were not African-American, violated the same rule without being disciplined. Compl. ¶ 14. On February 4, 2011, Hixon protested the warning and demanded

that other employees who violated the rule also be punished. Buntin alleges that in retaliation, the City suspended Hixon and ultimately terminated him on February 10, 2011. McGonagle, the DPW Director of Fleet Management, and Alther, a DPW foreman, participated in making the decision that led to Hixon's suspension and termination. Hixon applied for unemployment benefits, which led to multiple hearings before the Department of Unemployment Assistance (DUA) in January of 2013. At the hearings, McGonagle and Alther testified that Hixon was terminated because he refused to submit to a drug and alcohol test in violation of City policies when they held a reasonable suspicion to believe he was under the influence of alcohol while on the job. *Id.* ¶ 35; Defs.' Mem at 2. Buntin complains that the City did not provide Hixon with a "name-clearing" hearing, "even though defendants were aware of the blemish on Hixon's reputation." Compl. ¶ 36. On February 19, 2013, Hixon submitted an application for re-employment with the City of Boston. On February 26, 2013, the City notified Hixon that he would not be rehired. Hixon died in November of 2014.

Buntin instituted this action on February 6, 2015, in the Suffolk Superior Court. The Complaint is in seventeen counts, peppered with references to the Federal Civil Rights Act, 42 U.S.C. § 1981, and Hixon's

"right to due process." *Id.* ¶ 36. The facts alleged in Buntin's Complaint also included citations to federal Titles VI and VII. Defendants removed the case to the federal district court on February 25, 2015.

DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations of a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 559 (2007); *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008). As the Supreme Court has emphasized, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

Section 1981 Claims

Buntin asserts that, while employed at the City of Boston, Hixon was subjected to racial discrimination, disparate treatment, a hostile work environment, and retaliation in violation of 42 U.S.C. § 1981, and that his procedural due process rights were violated, presumably in violation of 42 U.S.C. § 1983. Defendants move to dismiss these claims asserting that they

4

did not survive Hixon's death, and in any event are barred by a three-year statute of limitations.

Discrimination claims under 42 U.S.C. § 1981 (and Mass. Gen. Laws ch. 151B) must be submitted for administrative adjudication prior to the filing of a lawsuit. *See Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277-278 (1st Cir. 1999); *see also Aly v. Mohegan Council, Boy Scouts of Am.*, 711 F.3d 34, 41 (1st Cir. 2013) (failure to exhaust the Title VII "administrative process 'bars the courthouse door'"); *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990) ("Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court."). Similarly, a state plaintiff must file an administrative charge with the Massachusetts Commission Against Discrimination (MCAD) "within 300 days of the occurrence of the alleged harassing or discriminatory event or events."[1] Mass. Gen. Laws ch. 151B, § 5. The MCAD filing requirement has a dual purpose, first to give the agency an opportunity to investigate and conciliate the claim, and second to give a defendant notice of a

---

[1] Under section 2000e-5(e), a plaintiff has 180 days after the alleged unlawful employment practice to file a claim with the Equal Employment Opportunity Commission (EEOC). Section 2000e-5(e) extends this period to 300 days when the plaintiff files first with an authorized state or local agency. 42 U.S.C. § 2000e5(e)(1); *Noviello v. City of Boston*, 398 F.3d 76, 85 (1st Cir. 2005) (Massachusetts is a deferral state which affords a plaintiff 300 days to file an administrative charge.). The Complaint avers neither an administrative charge filed with the EEOC nor the MCAD.

potential suit. *Carter v. Comm'r of Corr.*, 43 Mass. App. Ct. 212, 217 (1997); *see also Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). The failure to file a timely charge of discrimination with the MCAD (or EEOC) requires the dismissal of any subsequent lawsuit. *See Davis v. Lucent Techs., Inc.*, 251 F.3d 227, 231 (1st Cir. 2001); *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 531 n.11 (2001).

Hixon, through counsel, filed a charge with the MCAD on December 13, 2013. The Commission in due course dismissed the charge as having been filed outside its 300-day statute of limitations. On January 11, 2014, Hixon filed a second charge "regarding the same subject matter . . . alleg[ing] a violation date of January 15, 2013, which is the date . . . Respondent [McGonagle and Alther] allegedly made false statements at an unemployment hearing." Dkt. #15-1 (MCAD dismissal dated 10/11/14). Finding that the second charge also fell outside the 300-day limitations period, the MCAD ordered a dismissal.[2] Counsel appealed and, at some point, moved to amend the MCAD charge to substitute Buntin for her father as the named plaintiff. The MCAD heard the appeal on March 26,

---

[2] In its dismissal, the MCAD noted that Hixon's counsel was provided the opportunity to resolve the inconsistencies between the two complaints. In the absence of a curative "compliant filing", the MCAD charge "against the City of Boston, Scott Alther and James McGonagle for discrimination based on national origin, race, and color and retaliation" was dismissed. *Id.*

2015. On April 7, 2015, the Investigating Commissioner (IC) affirmed the prior dismissal. This court agrees with the IC that, for purposes of the federal claims, the MCAD filing was untimely. *See Christo v. Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 817-818 (1988). As pled in the Complaint, either February 4, 2011, the day that Hixon protested the written warning issued by his managers period, *id.* ¶ 15, or February 10, 2011, the day that Hixon was terminated, triggered the running of the limitations period. *Id.* ¶¶ 18-19. Hixon failed to file his MCAD charge within 300 days of either event.

> In her Opposition, Buntin contends that
>
> [t]he discriminatory acts of which plaintiff complains are governed by the continuing violation theory. The wrongful acts of the employer, in subjecting Hixon to discriminatory drug testing in October, 2007 formed part of a continuing series of discriminatory acts, sufficient to create and perpetuate a racially hostile work environment and constitutes a violation of § 1981, especially when tied to the disparate treatment visited on Hixon in February, 2011. Since at least one of the acts contributing to the hostile environment (the discriminatory termination) took place within the statutory time period, all of the acts forming the hostile work environment will impose liability on defendants.

Opp'n at 18. The argument is true insofar as it goes. Under Title VII, the continuing violation doctrine "allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and 'there is some violation within the statute

7

of limitations period that anchors the earlier claims.'" *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012). In addition to an anchoring violation within the 300-day period, the "discriminatory act must 'substantially relate to the earlier incidents of abuse.'" *Lockridge v. The Univ. of Maine Sys.,* 597 F.3d 464, 474 (1st Cir. 2010), citing *Sabree v. United Brothers of Carpenters and Joiners Local No. 33*, 921 F.2d 396, 401-402 (1st Cir. 1990). A plaintiff must also show that the "earlier violations outside of the six-month limitations period did not trigger the plaintiff's 'awareness and duty' to assert his rights." *Dean v. Champion Exposition Servs., Inc.*, 2013 WL 1992234, at *4 (D. Mass. May 10, 2013); see also *Windross v. Barton Protective Servs., Inc.*, 586 F.3d 98, 103 (1st Cir. 2009).

Hixon claims that he was subjected to discriminatory drug testing in 2007, for which he filed a grievance under his union's collective bargaining agreement. When disciplined on February 4, 2011, for bringing his personal vehicle in the DPW garage for repair, "[he] protested vociferously because other employees who were not of the protected class did the same and were not disciplined by supervisors." Compl. ¶ 14. Hixon avers that he complained to Alther and McGonagle that he was being punished while white co-workers who violated the same rule were not. *Id.* ¶ 15. When

Hixon confronted the defendants, "in retaliation for [his] vigorous defense of his right to oppose disparate treatment," he was "suspended" and ultimately terminated on February 10, 2011. *Id.* ¶ 17. At that point, it is beyond any reasonable debate that Hixon "knew or could have formed a reasonable belief that the earlier violations were discriminatory." *Windross,* 586 F.3d at 103, quoting *Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination,* 441 Mass. 632, 642-643 (2004) (internal quotations omitted).

As a fallback, Buntin asserts that "the jury could find that such harassment was sufficient to cause and perpetuate a hostile work environment." Opp'n at 16. "Hostile environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). A hostile work environment "'is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009), quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117. Such claims involve repeated acts in which each "single act of harassment may not be actionable on its own." *Johnson v. Univ. of Puerto Rico*, 714 F.3d 48, 53 (1st Cir. 2013). Consequently, as "long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within

9

the [300 day] time period," the charge is timely filed absent equitable doctrines or defenses such as laches. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 122; *see also Tuli v. Brigham &Women's Hosp.*, 656 F.3d 33, 40-41 (1st Cir. 2011); *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 18 (1st Cir. 2002). Because Hixon's termination on February 10, 2011 fits any legal definition of a discrete act, Buntin cannot resort to a hostile environment theory to defeat the limitations period. Hixon's administrative charge was untimely filed and his section 1981 claim must be dismissed.

Section 1983 claim

Buntin is correct that in some circumstances a four-year statute of limitations will apply to section 1981 claims, *see Jones v. Donnelly*, 541 U.S. 369, 377 (2004); however, section 1983 claims are subject to a strict three-year limitations period in Massachusetts.[3] *See Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). While the Complaint alleges that "[t]he employer has not afforded Hixon a name-clearing, in violation of his rights to due process," Compl. ¶ 36 – presumably meant as a section 1983 claim --

---

[3] "Section 1983 does not contain a built-in statute of limitations." *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995). Thus, a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action. *Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985). Massachusetts prescribes a three-year statute of limitations for personal injury actions. *See* Mass. Gen. Laws ch. 260, § 2A.).

Buntin fails to plead any facts in support of the assertion.[4] *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). As a consequence, the court is unable to discern whether or not the statute of limitations has run.[5] "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at n.3, quoting 5 Wright & Miller § 1202, at 94, 95 (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it."). Moreover, Buntin fails to address defendants' arguments for dismissal of the section 1983 claim in her opposition, other than to claim in a heading that "Hixon's Claims Under s. 1981 and s. 1983 are Justiciable." Opp'n at 16. As a consequence, Hixon's section 1983 claim

---

[4] The court is unclear as to what is meant by a "name-clearing hearing," although assumes that the suggestion is a trial of the defamation claims on their merits.

[5] Nowhere in the Complaint does Buntin state that Hixon filed a MCAD or EEOC Complaint or presented his defamation claim or a request for a "name-clearing hearing" to the City of Boston. In her Opposition she simply asks the court to take judicial notice of a "MCAD proceeding" without citing the date of his original administrative filing. The court unearthed the date – December 13, 2013 -- in documents attached to the defendants' Reply brief. Dkt. #15.1 at 3.

will be dismissed. *See Rocafort v. IBM Corp.,* 334 F.3d 115, 122 (1st Cir. 2003) ("[A] party has a duty 'to incorporate all relevant arguments in the papers that directly address a pending motion.'", quoting *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.,* 97 F.3d 1504, 1525-1526 (1st Cir. 1996) (three sentences with three unexplained citations did not defeat waiver)); *see also McCoy v. Mass. Inst. of Tech.,* 950 F.2d 13, 22 (1st Cir. 1991) (claims that are "insinuated rather than actually articulated" are waived).

ORDER

For the foregoing reasons, plaintiff's section 1981 and 1983 claims are <u>DISMISSED</u>. As the foundational federal claims have been dismissed, the Clerk will remand the remaining state law claims to the Superior Court. *See Camelio v. Am. Fed'n,* 137 F.3d 666, 672 (1st Cir. 1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." (citing *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir. 1995)).

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE